**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X
M.S. and M.D., on behalf of B.D.S.,

                             Plaintiffs,                      **COMPLAINT**

                  -against-                     **ECF CASE 2:20-cv-3380**

New Hyde Park-Garden City Park
Union Free School District,

                             Defendant.
------------------------------------------------------------------X

       Plaintiffs M.S. and M.D., individually and on behalf of their son B.D.S., by their attorneys, Thivierge & Rothberg, P.C., as and for their Complaint, allege and state the following:

**PRELIMINARY STATEMENT**

1. Plaintiffs M.S. and M.D. individually and on behalf of their child, B.D.S., bring this action pursuant to the Individuals with Disabilities Education Improvement Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, the pertinent implementing regulations promulgated under the Code of Federal Regulations, § 300.342, *et seq.*, Article 89 of the New York State Education Law, Section 504 of the Rehabilitation Act of 1973, and Part 200, *et seq.*, of the Commissioner of Education's Regulations, against the Board of Education of the New Hyde Park-Garden City Park Union Free School District ("The District").

2. Plaintiffs seek review and reversal of State Review Officer ("SRO") Justyn P. Bates's decision dated April 3, 2020[1] ("2020 SRO Decision"), upholding an Impartial Hearing Officer's ("IHO") decision dated January 2, 2020[2] ("2020 IHO Decision"), both of which

---

[1] A true copy of the SRO Decision, *Application of a Student with a Disability*, Appeal No. 20-025, is annexed hereto as Exhibit A.
[2] A true copy of the IHO Decision is annexed hereto as Exhibit B.

erroneously found that the District offered B.D.S. a free and appropriate public education ("FAPE") for the twelve-month 2019-2020 school year (July 2019 – June 2020).

## JURISDICTION AND VENUE

3. This Court, pursuant to 20 U.S.C. § 1415(i)(2)(A), 28 U.S.C. § 1331, and 28 U.S.C. § 1367, has jurisdiction over this action without regards to the amount in controversy.

4. Venue is proper pursuant to 28 U.S.C. § 1394(b) in that plaintiffs and defendant all reside in or are situated within this judicial district.

## THE PARTIES

5. B.D.S. and his parents, M.S. and M.D., are not expressly named herein by their given names, or further identified by their actual addresses within the Eastern District of New York, because of privacy guarantees provided in the IDEA, as well as in accordance with the Family Educational Rights Privacy Act ("FERPA"), 20 U.S.C. § 1232(g) and 34 C.F.R. § 99.

6. At all relevant times pertaining to this action, M.S. and M.D., as the parents of B.D.S., were and are residents of the State of New York in Nassau County, residing at an address within the boundaries of the District.

7. Defendant, the District, upon information and belief, is a duly constituted school district organized under the laws of the State of New York, and is the agency charged with the obligation to provide B.D.S. with a FAPE in accordance with IDEA mandates.

## RELIEF BEING SOUGHT

8. Plaintiffs seek a determination that (a) the District failed to provide B.D.S. with a FAPE for the 2019-2020 school year; (b) B.D.S.'s placement at Gersh Academy was appropriate for him; (c) equitable considerations favor B.D.S. and his parents; and (d) B.D.S. is

entitled to any other, further, and different relief the Court deems appropriate under the circumstances.

9. Pursuant to the IDEA and New York State Education Law, all school districts within New York State are required to offer eligible students with disabilities educational programs tailored to meet these students' individual needs, which provide each student with a FAPE. The vehicle for delivering a student's program is an Individualized Education Program ("IEP"). Parents have separate statutory entitlements that are tied directly to their child's right to receive a FAPE. The FAPE requirements under the IDEA and the New York State Education Law are different for each child, and a "one size fits all" approach is not accepted.

10. A District may be ordered to reimburse parents for their expenditures for private educational expenses obtained for a child if the services it offered were inadequate or inappropriate ("Prong I"), the services selected by the parents were appropriate ("Prong II"), and equitable considerations support the parents' claims ("Prong III"). *Sch. Comm. of Burlington v. Dept. of Educ.*, 471 U.S. 359 (1985); *Florence County Sch. Dist. Four v. Carter*, 510 U.S. 7 (1993).

11. The Supreme Court has found that Congress intended for such reimbursement to be available as a remedy for parents when the school district failed to offer the student a FAPE. "Reimbursement merely requires [a district] to belatedly pay expenses that it should have paid all along and would have borne in the first instance," had the district offered the student a FAPE. *Burlington*, 471 U.S. at 370-71.

12. In New York State, there is a two-tier administrative due process review. A parent who believes that an IEP is insufficient may challenge it at a hearing before an IHO. 20 U.S.C.

§ 1415(f); N.Y. Educ. L. § 4404(1)(a). "At that hearing, the school district has the burden of demonstrating the appropriateness of its proposed IEP." *Grim v. Rhinebeck Cent. Sch. Dist.*, 346 F.3d 377, 379 (2d Cir. 2003). The IHO's decision may be appealed to an SRO, which may in turn be challenged in either state or federal court. *Id.* at 380. (citing 20 U.S.C. § 1415(g), (i); N.Y. Educ. L. § 4404(2)); *see also* N.Y. Educ. L. § 4404(1)(c).

13. The District Court "conducts a 'modified de novo' review of the administrative proceedings," and is charged with making an independent decision based on the preponderance of the evidence developed at the administrative proceedings, and any other evidence presented by the parties. *See M.N. v. N.Y. City Dep't. of Educ.*, 700 F.Supp.2d 356, 363-364 (S.B.D.S.Y. 2010); *Walczak v. Florida Union Free Sch. Dist.*, 142 F.3d 119, 122-123 (2d Cir. 1998). The Court does not "rubber stamp" administrative decisions, but rather, is expected to give "due weight" to the factual determinations made during the state administrative process. *Walczak,* 142 F.3d at 129; *see Rowley,* 485 U.S. at 206. The Court has "broad authority to grant 'appropriate' relief, including reimbursement for the cost of private special education where a school district fails to provide a FAPE." *Forest Grove School Dist. v. T.A.,* 557 U.S. 230, 239 (2009).

14. In an action involving rights provided by IDEA, the District Court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C); *see M.S. v. N.Y. City Dep't of Educ.,* 231 F.3d 96, 102 (2d Cir. 2000).

15. Plaintiffs have invoked B.D.S.'s pendency rights while the instant matter is pending.

16. During the pendency of any proceeding conducted pursuant to the IDEA, unless the school district and the parents otherwise agree, the student shall remain in his or her then current educational placement, otherwise known as the pendency placement. 20 U.S.C. § 1415(j); N.Y. Educ. L. § 4404(3)(a). Pendency has the effect of an automatic preliminary injunction, which is imposed without regard to such factors as irreparable harm, likelihood of success on the merits, or the balancing of hardships. *Zvi D. v. Ambach*, 694 F.2d 904 (2d Cir. 1982); M.G. v. N.Y. City Dep't of Educ., No. 13 Civ. 4639 (SAS), 2013 WL 3974165, at *4 (S.D.N.Y. Aug. 1, 2013)(granting an injunction to maintain pendency services).

17. An SRO decision favorable to a student's parents "serves to change the child's 'stay-put' placement to the unapproved private school during the pendency of any judicial review." *Murphy v. Arlington Central School District*, 86 F. Supp.2d 354, 358 (S.D.N.Y. 2000), *aff'd* 279 F.3d 195 (2d Cir. 2002).

18. B.D.S.'s pendency placement was established by the November 17, 2018, Decision by SRO Justyn P. Bates[3] ("2018 SRO Decision"), which affirmed an IHO decision dated September 2, 2018, ("2018 IHO Decision") finding that the District's program was not appropriate for B.D.S.[4]

19. In this action, the District must continue to fund B.D.S.'s pendency placement unless and until a new pendency placement is established.

**FACTUAL BACKGROUND**

---

[3] A true copy of the 2018 SRO Decision, *Application of the Board of Education of New Hyde Park-Garden City Park Union Free School District*, Appeal No. 18-118, is annexed hereto as Exhibit C.
[4] A true copy of the 2018 IHO Decision is annexed hereto as Exhibit D.

20. B.D.S. is an eight-year-old boy, diagnosed with Autism Spectrum Disorder ("ASD") Level 3 (requiring very substantial supports) and an Intellectual Disability. (Ex. 1, E-10, F-11[5]). B.D.S. has a history of serious and life-threatening maladaptive behaviors including self-injury, pica (mouthing inedible objects), aberrant self-stimulation, and impulsivity. (Exs. C, E, F, G, H, Q, R.) In addition, at the time of his 2019-2020 CSE meeting and despite progress in other areas, B.D.S. had begun engage in new aggressive behaviors. (SRO-28; Exs. R-1-6, K-L, U; T. 540, 806-07.)

21. The District failed to develop a procedurally and substantively appropriate IEP for B.D.S. which was calculated to enable him to receive educational benefits during the 2019-2020 school year.

22. The District's program lacked appropriate Applied Behavior Analysis ("ABA") instruction with trained instructors and supervision by a Board Certified Behavior Analyst ("BCBA"), which is the type of programming B.D.S. requires to progress. Moreover, District witnesses provided inaccurate information regarding their program and staffing. The District failed to recommend appropriate behavior support or tailored instruction, instead attempting to force B.D.S. into the only option it had available for him.

23. In fact, for the 2019-2020 school year, the District recommended the same program for B.D.S. as it had proposed for the 2017-2018 school year, even though this program was inappropriate for B.D.S. (*See* Ex B-48, 87).

24. After providing proper and timely notice to the District of their claims for the 2019-2020 school year, B.D.S.'s parents filed a request for an impartial hearing, asserting procedural and substantive challenges to the District's proposed program and requesting an order

---

[5] Citations to Tr. and Ex. refer to the impartial hearing transcript and impartial hearing exhibits.

requiring the District to continue to fund B.D.S.'s program at Gersh Academy. (2020 SRO Decision, p. 4). After an opportunity to visit the District's proposed program, B.D.S.'s parents amended their request for an impartial hearing asserting additional challenges. (2020 SRO Decision, p.8).

25. After an impartial hearing held between September and December 2019, against the weight of the evidence presented, the IHO improperly found that the District had offered B.D.S. a FAPE for the 2019-2020 school year. The IHO failed to issue any determination as to the appropriateness of B.D.S.'s placement at Gersh Academy or as to the equities. (*See generally* 2020 IHO Decision[6]).

26. The IHO Decision rested on improper factual and legal analysis and relied heavily on improper retrospective evidence. (*See generally* IHO).

27. B.D.S.'s parents appealed the IHO Decision to the New York State Education Department's Office of State Review. By Decision dated April 3, 2020, the SRO improperly upheld the IHO's determination that the District had offered B.D.S. a FAPE for 2019-2020.

28. Much like the IHO Decision, the SRO's determination was not thorough or well-reasoned, and failed to address several issues raised by the plaintiffs.

29. Moreover, in reviewing the 2020 IHO Decision, the SRO held Respondent to to a far lower standard than the one he applied in reviewing the 2018 IHO Decision (which held for the Plaintiffs), without justification.

30. The SRO blindly adopted the IHO's findings even where the IHO had done little or no analysis, and failed to engage in an independent and meaningful review of the evidence,

---

[6] The IHO decision does not include any mention of why these issues were not addressed.

as is required. *See* 34 C.F.R. § 300.514(b)(2); 8 N.Y.C.R.R. § 279.12 (a) (The SRO conducts an impartial review of the IHO's findings conclusions and decision and is required to *examine the entire hearing record*; ensure that the procedures at the hearing were consistent with the requirements of due process; seek additional evidence if necessary; and render an independent decision based upon the hearing record)(emphasis added).

31. Amidst the procedural history of this case lies a simple but serious concern: The District repeatedly has failed to offer B.D.S. a FAPE, and continually has provided misleading information in an attempt to maintain the pretense that their program could offer appropriate ABA instruction and BCBA supervision.

32. B.D.S. has attended Gersh Academy continuously since December 2016 pursuant to either an agreement between the parties or as a result of the previous IHO Decision. (2020 SRO Decision, p. 2).

33. The District held a Committee on Special Education ("CSE") meeting to develop B.D.S.'s IEP for the twelve-month 2019-2020 school year on May 22, 2019. (2020 SRO Decision, p. 2; Ex. 1; Tr. 877).

34. The CSE discussed B.D.S.'s undisputed progress at Gersh Academy, a 1:1 ABA program with BCBA oversight and supervision. (SRO-38; Ex. 1; Tr. 129, 461, 696-97, 877-70). B.D.S.'s neuropsychologist, Dr. Anne Marie Lepore, and Gersh Academy staff reported that B.D.S. continued to display maladaptive behaviors and difficulty with social skills. (Ex. F-7, F-11; Tr. 690).

35. The District copied its IEP Goals from a Gersh Academy report, which District witnesses later inaccurately claimed they had not received before the CSE meeting. (Exs. N, M-3, W; Tr. 130-31, 135-36, 234-37, 487, 881).

36. For 2019-2020, the District proposed that B.D.S. would attend in-District 6:1:3 special class program, just as it had for the past several years. (Ex 1.)

37. B.D.S.'s parents and Dr. Lepore raised serious concerns that B.D.S. would regress socially, behaviorally, and academically in the District's proposed program. (Tr. 435).

38. The District refused to continue to place B.D.S. at Gersh Academy or a similar program with 1:1 ABA instruction and BCBA oversight.

39. The District's proposed IEP failed to recommend any 1:1 ABA instruction or supervision by a BCBA for B.D.S., nor any BCBA support for school personnel on his behalf. "[W]hen the reports and evaluative materials present at the CSE meeting yield a clear consensus, an IEP formulated for the child that fails to provide services consistent with that consensus is not reasonably calculated to enable the child to receive educational benefits." *A.M. v. New York City Dep't of Educ.*, 845 F.3d 523, 543 (2d Cir. 2017)(*citing R.E. v. N.Y.C. Dep't of Educ.,* 694 F.3d 167, 190 (2d Cir. 2012).

40. A student's IEP must contain "a statement of the special education and related services and supplementary aids and services…to be provided to the child,… and a statement of the…supports for school personnel that will be provided for the child." 20 U.S.C. § 1414(d)(1)(A)(i)(IV).

41. The District's proposed IEP could not be appropriate for B.D.S. without recommending specific BCBA support and services.

42. In stark contrast to what the District proposed, B.D.S.'s program at Gersh Academy highlighted what his individual needs required. At Gersh Academy, B.D.S. received provides 3-4 hours per day of 1:1 ABA instruction per day. (Tr. 506, 525, 754, 776.) Amy Bell, a BCBA, supervises three classes at Gersh, including B.D.S.'s classroom. (Tr. 743.) She also supervised and trained paraprofessionals, teachers, and teacher's assistants on an ongoing basis. (Tr. 743-45, 749, 850.) Ms. Bell developed behavior plans, designed how data should be collected and graphed, reviewed data, and trained staff on implementation of behavior plans, and is always available to B.D.S.'s classroom. (Tr. 776.) Gersh Academy also had a second BCBA, school psychologist, and three school social workers to assist with instruction and behavior intervention. (Tr. 769, 800.)

43. As noted, the District's IEP for B.D.S. did not recommend any BCBA supervision. (Ex. 1-17). The District retrospectively claimed that a consultant BCBA could work with B.D.S. Even taking this retrospective evidence at face value, the consultant BCBA was not a district employee and was not present in the district with any consistency. (T. 105, 130, 159, 254-55, 291, 347, 469, 893, 948. *See* Ex. Z.)

44. The 2018 IHO Decision held that B.D.S. requires a full time intensive ABA program, and a "full time intensive ABA program in the District required more attention than could possibly be provided by a consultant who is not a District employee and provides supervision on as 'as needed' basis." (Ex. B-44). Having a full time BCBA supervising a school is "very important…if you don't have an individual in the program day-to-day, all day…you don't have an ABA placement." (Tr. 712, 756, 1043).

45. Dr. Lepore's evaluated B.D.S. and recommended that he attend a program with BCBA support and supervision. (Ex. E-11, F-11).

46. As B.D.S.'s unique needs require a program with BCBA supervision, the District was required to include BCBA services on his IEP. A student's IEP must contain "a statement of the special education and related services and supplementary aids and services…to be provided to the child,… and a statement of the…supports for school personnel that will be provided for the child." 20 U.S.C. § 1414(d)(1)(A)(i)(IV).

47. At the May 22, 2019 CSE meeting, B.D.S's parents were provided with a class profile listing information about 4 students and B.D.S. (Tr. 49-50; Ex. 14-1). The class profile reflected that students in the class ranged in age by 39 months, more than the 36-month maximum range. (Ex. 14). 8 N.Y.C.R.R. § 200.6(h)(5). The District failed to obtain an age variance before the start of the 2019-2020 school year. (Ex. 15).

48. At the time when B.D.S.'s parents were forced to make a decision on B.D.S.'s placement, the District program failed to conform to regulations regarding the 36-month age range. An approval for an age variance was not available at the time of the IEP development or B.D.S.'s parents' placement decision, and therefore it is retrospective and must be disregarded.

49. It is undisputed that the District failed to conduct a Functional Behavioral Assessment ("FBA") or develop a Behavior Intervention Plan ("BIP") for B.D.S., despite recognizing that B.D.S. exhibited maladaptive and interfering behaviors (2020 SRO Decision, p. 28; Ex. 1).

50. Instead, District staff retrospectively testified that had B.D.S. attended the District's 6:1:3 program, they would have used B.D.S.'s BIP from Gersh Academy, even though it was specific to B.D.S.'s behaviors at Gersh Academy and could not be carried over to a novel

setting. (Tr. 328-30). The District's IEP does not reflect that it intended to use Gersh Academy's BIP, and this was not mentioned at the CSE meeting. (*See* Ex. 1).

51. The District's mission to try to make its program sound similar to Gersh Academy illustrates that District personnel believed Gersh Academy to be an appropriate setting for B.D.S. Still, the District steadfastly refused to continue B.D.S.'s placement at Gersh Academy for the 2019-2020 school year.

52. By letter dated June 17, 2019, B.D.S.'s parents expressed their initial concerns about the District's recommendations but noted that they wished to visit the program in person to gain more information. They provided timely notice of their intention to continue to send B.D.S. to Gersh subject to appropriate recommendations for him from the District. (Ex. V).

53. On July 24, 2019, B.D.S.'s parents filed a due process complaint notice seeking, *inter alia*, B.D.S.'s tuition at Gersh, including all supports and services, for the 2019-2020 school year, and invoking B.D.S.'s pendency rights. (Ex. A-8).

54. On July 26, 2019, B.D.S.'s parents observed the District's proposed 6:1:3 classroom. (Tr. 453, 883-84; Ex. B-8).

55. At the time, the classroom staff reinforced and rewarded students for engaging in maladaptive and interfering behaviors. Students received reinforcers after demonstrating such behaviors as self-injury and task refusal, or were so disengaged that they were not aware of the reinforcer. (Tr. 1058-59, 1063-64). Classroom staff did not collect data regarding behaviors for any of the students in the class, despite three students reportedly having BIPs. (Tr. 889, 1064).

56. One student was hitting himself in the head and being reinforced for his behavior. (Tr.

1058). B.D.S. has a history of severe self-injury. (Tr. 541, 779, 1020, 1029; Exs. C-2, C-8-9, E, F, G-2, H, Q, R). The consultant BCBA would not be in the classroom full time or with any predictable schedule often intervened to correct the classroom staff's incorrect instructional techniques. (Tr. 332, 890, 1059; Ex. B-9).

57. B.D.S.'s self-stimulatory behaviors severely impede his learning, and it would be inappropriate to ignore or reinforce his behaviors. (Tr. 805, 1018-19; Ex. H-1). *See A.W. v. Bd. of Educ. of the Wallkill Cent. Sch. Dist.*, 2016 WL 4742297, at *3 (N.D.N.Y. 2016)(failure to address significant behaviors that affected student's ability to perform in the classroom of which district was aware resulted in a denial of FAPE). B.D.S. would regress greatly in a program that did not address his off-task self-stimulatory behaviors.

58. District CSE Chairperson Kim Levy refused to allow B.D.-S.'s parents to view any sample academic data during the visit. (Tr. 891, 909-10.).

59. The District's program lacked "systematic interventions" and "consistency of supervision." (Tr. 1060). The District teacher Marisa Forster was unaware of proper ABA discrete trial skill programming and could not provide B.D.S. with appropriate instruction. (Tr. 104, 149, 1057-59, 1065). She utilized inappropriate ABA techniques, indicating the BCBA was not supervising the program sufficiently. *Id*. Ms. Forster has a Bachelor's degree in Criminal Justice, and no ABA certification. (Tr. 27). The staff lacked the experience and training needed to instruct a student with highly intensive needs like B.D.S.

60. Consultant BCBA Doreen Ivory split her limited time across four District schools (and private clients), and could not be available full time, especially in the event of an emergency. (Tr. 376, 948-50). Ms. Ivory would not be instantly available in the classroom

or even reachable in the case of a behavioral emergency. (Tr. 776).

61. An amended due process complaint was filed regarding issues with the District program on September 3, 2019. (SRO-7).

62. At hearing, District witnesses testified falsely, misrepresenting Ms. Ivory's hours spent in the District program. (Tr. 40-41, 291-92). Time sheets obtained via subpoena showed that Ms. Ivory worked in the 6:1:3 District program for fewer hours than she and other District staff had claimed. (Tr. 254, 291, 469, 948-49; Ex Z). Notably, her average hours in the District decreased immediately after she testified in the impartial hearing. (*See* Tr. 254, 469, 948-49, 952; *contrast* Ex. Z-5-14 and Ex Z-15-22).

63. The time sheets also demonstrate that another consultant, who is not a BCBA, was providing support to the District program. (Tr. 971-72, 988, 1043; Ex. Z). This contradicts the District's claim that Ms. Ivory exclusively provided hours. (Tr. 40-41).

64. In the month of September 2019, Ms. Ivory worked in-District for an average of 18 hours per week[7], spread out across four District schools. (*See* Ex. Z-5-14; T. 469, 948-49). In October 2019, by contrast, Ms. Ivory worked in-District for an average of 9.25 hours per week. (*See* Ex. Z-15-22; T. 254). After Ms. Ivory's timesheets were provided to B.D.S.'s parents, the District recalled Ms. Ivory to provide additional testimony, and she claimed her hours in October were decreased due to working on FBAs and BIPs. However, this contradicts prior District testimony that the 20 hours of weekly consult services were to be provided regardless of time spent conducting FBAs and BIPs. (Tr. 40-41, 291).

65. Moreover, the evidence demonstrates that even when present, Ms. Ivory did not supervise the program. Ms. Forster testified that Ms. Ivory was "more of a support." (Tr. 159). In

---

[7] This average includes the hours Ms. Ivory spent testifying on September 26, 2019, which was not spent directly working in classrooms. (Tr. 952).

fact, she trained aides on how to collect data, not Ms. Ivory. (Tr. 106). For new students, Ms. Ivory only participated in the initial assessment when invited by Ms. Forster. (Tr. 130). Ms. Ivory did not know how many students in the 6:1:3 special class had a BIP. (Tr. 241-48, 343).

66. The District provided contradictory testimony regarding BCBA services in B.D.S.'s 2017-2018 case as well, reasonably engendering M.S. and M.D.'s continued concern that the District would not provide BCBA services not listed on the IEP for B.D.S. for the 2019-2020 school year. (Ex. B-30-33. See Ex. B-87). For both school years, there was no true schedule or plan for ensuring appropriate BCBA services; because services were not memorialized in an IEP, the District never formalized the role of the part-time BCBA. (*See* 2018 IHO Decision, pp. 22, 34-35).

67. As the District failed to offer B.D.S. an appropriate program, B.D.S. continued to attend Gersh Academy for the 2019-2020 school year, where he received 1:1 ABA instruction and appropriate behavior supports. (Tr. 525, 754, 775-76, 790-91). B.D.S. continued progress meaningfully at Gersh Academy during the 2019-2020 school year. (Ex. N-4; Tr. 778, 897.) Most notably, he displayed a meaningful reduction in off-task and self-injurious behaviors. (Exs. F-2, U; Tr. 678, 856.)

## LEGAL CLAIMS

68. Neither the 2020 IHO Decision nor the 2020 SRO Decision should be afforded deference. Both 2020 Decisions should be reversed. Neither Decision is supported by testimony, evidence, or applicable law and review standards. Both the IHO and SRO failed to engage in a thorough and careful review of the testimony and evidence. In fact, the SRO implicitly conceded that the IHO should have provided further detail about the case, and more fully

developed the reasoning and factual basis for her conclusions. (2020 SRO Decision, pp. 18, 27, 41).

69. Neither the 2020 IHO Decision nor the 2020 SRO Decision turns on educational expertise such that deference is warranted. Rather, both decisions misapply the law. *De novo* review compels a finding that the District denied B.D.S. a FAPE.

70. The IHO and SRO relied on limited portions of the record, and crafted one-sided and incomplete decisions.

71. The 2020 SRO Decision is undeserving of deference because the SRO applied inconsistent standards. The SRO excused a pattern of errors and lack of analysis from the IHO that revealed a poorly-reasoned decision, holding the IHO to a far lower standard in this case than the IHO in B.D.S.'s 2018 case, wherein the IHO found for B.D.S.'s parents.

72. In 2018 when the IHO found for the parents, the SRO ignored the implicit credibility determinations of the IHO, finding that District witnesses (who also testified in this case) were not credible, without justification. *M.W. v. New York City Dep't of Educ.,* 869 F. Supp. 2d 320, 330 (E.D.N.Y. 2012), *aff'd*, 725 F.3d 131 (2d Cir. 2013) (*citing Carlisle Area Sch. v. Scott P.,* 62 F.3d 520, 529 (3d Cir.1995)). "Such implicit credibility assessments are as entitled to deference... as explicit findings." *A.B. v. Lawson*, 354 F.3d 315, 327-28 (4th Cir 2004). In the 2018 SRO Decision, the SRO credited testimony from District witnesses that the District could provide ABA when the IHO had implicitly deemed the District witnesses not credible. (*Compare* 2018 IHO Decision 33-35, 2018 SRO Decision 31 fn. 31).

73. In the 2020 SRO Decision, by contrast, the SRO inexplicably found the District witnesses credible despite their outright false testimony at hearing. The IHO and SRO erroneously failed to engage in any analysis of the falsehoods by District witnesses.

74. The credibility determinations from the 2020 IHO Decision, which the SRO appeared to uphold, should be overturned. (2020 SRO Decision, p. 17). Unlike the District witnesses, the Parents' witnesses gave honest opinions supported by documentary evidence in the record.

75. With the 2018 SRO Decision, the SRO analyzed only one issue related to the District's failures, where the underlying 2018 IHO Decision had found for B.D.S. and his parents on several issues. (2018 SRO Decision, p. 15; *see generally* 2018 IHO Decision). Here, the SRO found against parents on multiple grounds, each of which is incorrect and should be overturned.

76. With the 2018 SRO Decision, the SRO disregarded the extensive, detailed analysis in the 2018 IHO decision, erroneously boiling her analysis down to one phrase and ignoring the remainder of her analysis. (2018 SRO Decision, p. 31, fn. 31). The 2018 IHO Decision cited extensively to case law, but the SRO inappropriately dismissed her factual and legal arguments. (*See generally* 2018 IHO Decision; 2018 SRO Decision, p. 31, fn. 31). Here, on the other hand, the IHO barely cites to case law, and does so only cursorily, but the SRO erroneously credited her legal analysis.

77. Similarly, in 2018 the SRO erroneously alleged that the IHO made only a conclusory statement regarding how Gersh Academy addressed B.D.S.'s unique needs. (2018 SRO Decision, p. 21). In fact, the IHO for the 2017-2018 matter included significant information about Gersh Academy's services and supports for B.D.S. (*See, e.g.,* 2018 IHO

Decision, pp. 26-27). In contrast, for the 2020 SRO Decision, the SRO excused the IHO's repeated conclusory statements, including for example the IHO's unexplained and erroneous claim that '[n]one of the supposed IEP deficiencies that the parents cited in their Due Process Complaint are valid." The IHO did not list these deficiencies or analyze any individually. (2018 IHO Decision, p. 15).

78. Plaintiffs' due process complaint notice for the 2019-2020 school year laid out in detail the District's procedural and substantive violations of B.D.S.'s rights, and the IHO and SRO ignored and glossed over all evidence of the District's failure to provide B.D.S. with a FAPE. Plaintiffs preserve any and all claims raised in their due process complaint notice, whether or not addressed by the IHO and/or SRO.

79. The IHO and SRO erred in finding that the District offered B.D.S. a FAPE, and should be reversed, in that the testimony and evidence do not support any finding that the District's proposed IEP and placement were tailored appropriately to meet B.D.S.'s individual needs.

80. The IHO and SRO ignored the weight of the testimony and evidence, which demonstrated that the District's IEP and program could not, as a matter of law, confer an appropriate educational benefit upon B.D.S., and should be reversed.

81. The SRO improperly found that the CSE meeting was appropriate and that B.D.S.'s placement was not predetermined. The IHO failed to address this issue.

82. The SRO disregarded evidence that the District and Ms. Levy unilaterally decided that the District placement was appropriate before the CSE had discussed placement. (*See* Tr. 881, 902, 1088). The District merely paid lip service to listening to other CSE Members' input, having already decided to continue the same recommendation they had made for prior

years. Other members of the CSE were afforded an opportunity to speak only after B.D.S.'s educational consultant solicited opinions. The District did not bother asking anyone else to opine on the recommendation and denied B.D.S.'s parents a voice in the CSE process by failing to meaningfully consider their concerns about B.D.S.'s placement needs. *See Deal v. Hamilton Cty. Bd. of Educ.*, 392 F.3d 840, 858 (6th Cir. 2004)(reasoning that an IEP can still be predetermined even when the parents are afforded the opportunity to speak at the CSE meeting, if the school district failed to adequately involve the parents in a collaborative process and consistently rejected parent requests).

83. The IHO and SRO also erroneously found that the District's program to be B.D.S.'s Least Restrictive Environment ("LRE"), when, in fact, B.D.S. was not able to benefit meaningfully from exposure to general education peers.

84. The IHO and SRO ignored and/or glossed over the significant testimony and evidence demonstrating that the District's proposed IEP and program recommendations would not have been appropriate for B.D.S., and should be reversed.

85. Notably, the IHO and SRO both failed to reconcile conflicting evidence and testimony by the District. *See P.C. v. Oceanside Union Free Sch. Dist.*, 818 F. Supp. 2d 516, 527-28 (E.D.N.Y. 2011)(holding that an IHO reasonably found a witness not credible and disregarded his testimony when the witness's testimony contradicted or misstated other evidence provided at hearing).

86. When non-testimonial evidence in the hearing record justifies a contrary conclusion, credibility determinations by the IHO are not due deference. *Carlisle*, 62 F.3d at 524, 528-29; *P.G. v. City Sch. Dist. of New York*, 2015 WL 787008, at* 16 (S.D.N.Y. Feb. 25, 2015); *M.W.*, 869 F. Supp. 2d at 330; *Bd. of Educ. of Hicksville Union Free Sch. Dist. v.*

*Schaefer*, 84 A.D.3d 795, 796 (2d Dep't 2011). The IHO and SRO are not due deference due to their failure to make a credibility determination regarding Ms. Ivory and other District witnesses regarding their false testimony about the provision of BCBA services.

87. The IHO and the SRO improperly found that the District would provide appropriate ABA instruction to B.D.S. Appropriate ABA programming requires BCBA support and supervision, and the District failed to make any such recommendation in B.D.S.'s 2019-2020 IEP. Any testimony or evidence concerning what BCBA support and services would or could have been provided in the District's proposed program is impermissibly retrospective. "[T]estimony that certain services not listed in the IEP would actually have been provided to the child if he or she had attended the school district's proposed placement" is retrospective and "may not be considered." *R.E.*, 694 F.3d at 185-86. Moreover, "[T]estimony regarding state-offered services may only explain or justify what is listed in the written IEP." *Id*. at 186.

88. Parents are "entitled to rely on the IEP's characterization of the services available to [the student] in deciding whether to place [the student] in a private school setting." *P.K. ex rel. S.K. v. N.Y. City Dep't of Educ.*, 526 Fed.Appx. 135, 140-41, 141 n. 8 (2d Cir. 2013)(holding that a teacher's testimony regarding supplemental classroom language instruction could not remedy a deficient IEP which failed to recommend sufficient individual language therapy). Therefore, "an IEP must be evaluated prospectively as of the time it was created." *R.E.*, 694 F.3d at 188. Prospective evaluation of the District's IEP for B.D.S. reveals that it was improper and insufficient for him.

89. The IHO and SRO erroneously found that the District's IEP was appropriate for B.D.S. even though it failed to recommend any BCBA services or supervision.

90. Furthermore, the IHO requested the creation of additional retrospective testimony from the District regarding the proposed class profile after the hearing had begun. This information was not available to B.D.S.'s parents at the time of their placement decision.

91. Neither the IHO nor the SRO conducted any legal analysis regarding the issue of retrospective testimony, despite the SRO noting that the Plaintiffs had raised the issue. (2020 SRO Decision, p. 12).

92. The conflicting testimony and evidence provided at hearing demonstrate why services must be listed in an IEP and retrospective post-hoc descriptions are harmful. The District was incapable of and/or unwilling to provide a clear, honest explanation of what BCBA services would be provided to B.D.S., and the IHO and SRO improperly ignored this issue.

93. The SRO erroneously labeled the central issue "whether a BCBA…[was] required to ensure that ABA was being properly provided…or more broadly, to deliver services recommended in the IEP related to the student's behavior needs." (2020 SRO Decision, p. 37).

94. The SRO inaccurately found that B.D.S.'s parents relied on the recommendations of the Behavior Analyst Certification Board ("BACB") that a BCBA was necessary for the appropriate provision of ABA for B.D.S. (2020 SRO Decision, p. 37). In fact, Dr. Lepore recommended that B.D.S. be placed in a program with adequate BCBA supervision. (Ex. E-11, F-11).

95. The SRO substituted his judgment for that of educational experts and should be reversed. The SRO ignored Dr. Lepore's recommendation (which was based on her professional expertise, testing, and records review) and instead concluded that B.D.S. did not need BCBA oversight and supervision based on progress reports. (*See* 2020 SRO Decision, pp.

38-39). Dr. Lepore has been working as a neuropsychologist for 15 years. (Tr. 625-29, 632). She has extensive experience working with students with behavioral needs and conducting neuropsychological evaluations to issue program recommendations. (*See* Tr. 625-40).

96. The SRO lacks the educational expertise to make this judgment, and failed to reconcile his conclusion with Dr. Lepore's significant evidence in the record, instead relying solely on District evidence without justification. *M.H. v. New York City Dep't of Educ.*, 685 F.3d 217, 252 (2d Cir. 2012).

97. The SRO erroneously disregarded the recommendations of the BACB for the provision of ABA services that ongoing and frequent BCBA supervision (of staff and students) and direct assessment, analysis, and plan adjustments to behavior plans by BCBAs are essential for the provision of ABA. (2020 SRO Decision, p. 37). The SRO erroneously dismissed the BACB as merely a "private organization." (2020 SRO Decision, p. 37).

98. In fact, the BACB is the recognized expert on ABA. BACB certification was sufficient to receive New York State licensure in behavior analysis for two years, and the current New York State licensure examination is based on the BACB recommendations.[8]

99. Moreover, the SRO created an argument out of whole cloth by claiming B.D.S. did not need BCBA services and support. At issue is whether BCBA supports must be included in the IEP recommendations and whether the District's program can provide appropriate BCBA support.

100. ABA is the only instructional methodology clinically proven to work for students with ASD, and BCBA supervision is critical to ensuring proper ABA program implementation.

---

[8] New York State Education Department, "Frequently Asked Questions," (last updated July 6, 2020) http://www.op.nysed.gov/prof/aba/abafaq.htm.

(Tr. 732, 756.) It is uncontested that B.D.S. requires an ABA program with BCBA supervision. (Tr. 674, 697, 1043; Exs. 1-4, E-11, F-11, G-2, G-5. *See* 2020 IHO Decision, pp. 5, 13). As noted, the District failed to recommend appropriate ABA programming or BCBA support and program supervision for B.D.-S. in his 2019-2020 IEP. (Ex. 1).

101.   The IHO and SRO erroneously held that the District was not required to include direct BCBA support and supervision on B.D.S.'s IEP because New York State Law does not require public schools to have licensed BCBAs. (2020 SRO Decision, p. 36; 2020 IHO Decision, p. 13).

102.   Statutory or regulatory requirements for services to be provided are a "flexible standard for schools to work from," not a "cookie-cutter" prescription for what services must be provided. *See A.S. v. Bd. of Educ. Shenendehowa Cent. Sch. Dist*., 2019 WL 719833, at *12 (N.D.N.Y. Feb. 20, 2019). "[T]he IDEA expressly rejects any…restrictions that preclude the genuine individualization of a student's educational program." *F.L. v. Bd. of Educ. of Great Neck U.F.S.D.,* 274 F. Supp. 3d 94, 110 (E.D.N.Y. 2017), *aff'd sub nom. F.L. v. Bd. of Educ. of Great Neck UFSD.*, 735 F. App'x 38 (2d Cir. 2018)(*citing Deal*, 392 F.3d at 859).

103.   The IHO and the SRO mischaracterized witness testimony, and should be reversed.

104.   The IHO and SRO ignored and/or glossed over the testimony and evidence demonstrating that the professionals who evaluated B.D.S. and worked with him had recommended that he continue to attend an ABA program at Gersh Academy or a similar program, and should be reversed.

105. The IHO and SRO improperly found that the Goals and Objectives in the District's proposed IEP would have been appropriate for B.D.S. in the District's 6:1:3 special class program.

106. The IHO and SRO ignored and/or glossed over the testimony and evidence that the District failed to conduct an FBA and BIP for B.D.S. to be used in its recommended program, and should be reversed.

107. The IHO and SRO ignored and/or glossed over the testimony and evidence demonstrating that the District's recommended 6:1:3 special class program was insufficiently intensive for B.D.S.'s needs and would cause him to regress, and should be reversed.

108. The IHO and SRO ignored the fact that the District's program exceeded the maximum age span for a classroom and the District did not receive approval for this variance until after B.D.S.'s parents made their placement decision.

109. The IHO and SRO misconstrued the law and the facts regarding parents' right to raise claims regarding issues with the District's program by erroneously suggesting only issues raised during the CSE meeting are relevant, and failed to properly evaluate claims raised in the due process complaint.

110. The IHO and SRO misconstrued the law and the facts regarding Congress' LRE requirement.

111. Overall, the IHO and the SRO failed to issue careful and thorough decisions, and thus, it is respectfully submitted that this Court should not defer to their improper determinations.

112. The record as a whole demonstrates that Plaintiffs have met the Prong II burden for tuition reimbursement as Gersh Academy offered B.D.S. instruction and supports tailored to his unique needs and that he progressed meaningfully there.

113. The record as whole demonstrated Plaintiffs have cooperated with the district such that equities weight in their favor.

## RELIEF SOUGHT

**WHEREFORE,** Plaintiffs respectfully request this Court:

(a) reverse the April 3, 2020, SRO Decision and the January 2, 2020, IHO Decision, in their entireties;

(b) declare that the District denied B.D.S. a FAPE for the 2019-2020 school year; that B.D.S.'s parents have met the applicable Second Circuit standards for reimbursement and funding of unilaterally provided tuition and special education services for B.D.S. for the 2019-2020 school year; and that the equities favor B.D.S. and his parents;

(c) order the District to reimburse plaintiffs and directly fund B.D.S.'s program at Gersh Academy;

(d) declare B.D.S. and his parents to be the "prevailing party" for purposes of the IDEA's fee-shifting provision;

(e) grant leave to plaintiffs' counsel to submit a fee application for purposes of statutory attorneys' fees and other recoverable costs at the administrative impartial hearing level, the SRO level, and in this action, pursuant to the IDEA's fee-shifting provisions; and

impartial hearing level, the SRO level, and in this action, pursuant to the IDEA's fee-shifting provisions; and

(f)     grant plaintiffs such other, further, and different relief as may be just under the circumstances.


Dated: New York, New York
          July 28, 2020

Christina D. Thivierge (CT 9565)
Thivierge & Rothberg, P.C.
Attorneys for the Plaintiffs
5 Hanover Sq., Suite 1201
New York, New York 10004
Tel: (212) 397-6360
Fax: (212) 397-6361
*christina@trspecialedlaw.com*